# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEANETTA HARTLEY, et al., | ) |
| Plaintiffs | ) |
| v. | ) Civil Action No. 10-0343 (ESH) |
| JOHN DOMBROWSKI, M.D., et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiffs Jeanetta and James Hartley originally sued defendants John Dombrowski, M.D. ("Dr. Dombrowski"), John Dombrowski, M.D., PC ("Dombrowski, PC"), and Massachusetts Avenue Surgery Center, LLC ("MASC"), for medical malpractice as a result of the allegedly negligent implantation of a spinal cord modulator in Mrs. Hartley's lumbar area when she was a patient at MASC on March 5, 2007.[1] The motions before the Court are (1) plaintiffs' Motion to Amend the Complaint to add informed consent and post-surgery malpractice claims; (2) Dr. Dombrowski and Dombrowski, PC's Motion to Dismiss for failure to comply with Maryland's statutory pre-filing requirements for malpractice claims; (3) Dr. Dombrowski and Dombrowski, PC's Motion to Transfer pursuant to 28 U.S.C. § 1404(a); and (4) MASC's Motion to Dismiss for lack of personal jurisdiction. As explained herein, the Court will grant plaintiffs' Motion to Amend and grant in part Dr. Dombrowski and Dombrowski, PC's Motion to Dismiss. It will deny Dr. Dombrowski and Dombrowski, PC's Motion to Transfer and deny as moot MASC's Motion to Dismiss.

---

[1] Mr. Hartley's claim is for loss of consortium.

## BACKGROUND

Plaintiffs, residents of Pennsylvania, allege that Mrs. Hartley received negligent medical treatment from Dr. Dombrowski, a physician licensed in Maryland and the District of Columbia; Dombrowski, PC, a professional corporation doing business in the District; and MASC, a Maryland corporation that does business in Maryland and is owned by physicians practicing in Maryland, Virginia, and the District. (Amended Complaint ["Am. Compl."] at 2.) According to plaintiffs, Mrs. Hartley was referred to Dr. Dombrowski by her pain management physician as a candidate for implantation of a spinal cord modulator to treat her chronic pain. (*Id.* ¶ 1.) After being informed that the procedure was low risk, Mrs. Hartley agreed to have the modulator temporarily implanted in her lumbar area for a trial period. (*Id.* ¶ 2.) Dr. Dombrowski scheduled the procedure to occur at MASC, a surgery center that he had an ownership interest in, without offering Mrs. Hartley any alternative locations. (*Id.* ¶ 4.) The temporary modulator was implanted on January 23, 2007, but it failed to reduce Mrs. Hartley's pain. (*Id.* ¶ 5.) On January 31, 2007, Mrs. Hartley met with Dr. Dombrowski at his District office, where he adjusted the device in hopes of improving its pain management. (*Id.* ¶ 6.) These adjustments were not effective, and Mrs. Hartley repeatedly telephoned Dr. Dombrowski's office to tell him so. However, he assured her that the device was safe and effective, and thus, Mrs. Hartley agreed to have it permanently implanted. (*Id.* ¶ 8.)

On March 5, 2007, Dr. Dombrowski implanted a permanent spinal cord modulator in Mrs. Hartley's lumbar area. (Complaint ["Compl."] ¶ 1.) The operation took place in Bethesda, Maryland at MASC and was performed with the assistance of MASC employees. (*Id.*) Following the operation, Mrs. Hartley complained of difficulty walking and pain in her back and lower extremities. (*Id.* ¶ 2.) Nevertheless, Dr. Dombrowski did not attempt to diagnose her

ailments, and MASC employees discharged her without alerting any physicians to her condition or obtaining physician approval. (*Id.* ¶¶ 3-4, 14.)

The following day, plaintiffs telephoned Dr. Dombrowski's office to inform him that Mrs. Hartley could not lift her left foot and was numb in her buttocks, reproductive, and perineal areas. (Compl. ¶ 6.) In response, Dr. Dombrowski prescribed a steroidal medication, but it did not result in any improvement. (*Id.* ¶¶ 6-7.) Plaintiffs then conferred with physicians in Pennsylvania, one of whom telephoned Dr. Dombrowski on March 12, 2007, to discuss Mrs. Hartley's condition. Two days after that conversation, Dr. Dombrowski removed the spinal cord modulator. (*Id.* ¶¶ 7-9.) However, even after the device was removed, the neurological damage to Mrs. Hartley's lumbar area and lower extremities persisted. Mrs. Hartley was diagnosed with permanent neurological damage in those areas. (*Id.* ¶¶ 10-11.)

On March 3, 2010, plaintiffs sued the three defendants for medical malpractice, *res ipsa loquitur*, and loss of consortium for negligently operating on and discharging Mrs. Hartley. (Compl. ¶¶ 12-22.) In response, Dr. Dombrowski and Dombrowski, PC have moved to dismiss the complaint because plaintiffs had not complied with the pre-filing requirements set forth in Maryland's Health Care Malpractice Claims Act, Md. Code Ann., Cts. & Jud. Proc. §§ 3-2A-01 to 09 ("Maryland's Act"). (Defs. Dr. Dombrowski and Dombrowski, PC's Mot. to Dismiss ["Dombrowski Mot. to Dismiss"] at 1.) Plaintiffs oppose this motion, or, in the alternative, they request that the action be stayed for 150 days while plaintiffs complete these pre-filing requirements. (Pls.' Mem. in Opp'n. to Dombrowski Mot. to Dismiss ["Pls.' Opp'n."] at 7.) Defendants have also moved to transfer the case to the Southern Division of the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1404(a). (Defs. Dr. Dombrowski and Dombrowski, PC's Mot. to Transfer at 1.) Finally, defendant MASC has

moved to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). (Mem. P. & A. in Supp. of Def. MASC's Mot. to Dismiss at 1.)

On July 21, 2010, plaintiffs moved to amend their original complaint. Plaintiffs sought to add a claim against Dr. Dombrowski and Dombrowski, PC for lack of informed consent. (Am. Compl. ¶¶ 22-24.) In support of this claim, plaintiffs' Amended Complaint alleges that Dr. Dombrowski never informed Mrs. Hartley that the procedure could leave her lower extremities paralyzed, and that the only warnings she received were in the Informed Consent Form that was given to her on the day of the surgery along with numerous other documents. (*Id.* ¶¶ 9-10.) Plaintiffs also sought to add a claim for post-surgical malpractice against Dr. Dombrowski and Dombrowski, PC for prescribing steroidal medication to treat Mrs. Hartley's numbness and paralysis. (*Id.* ¶¶ 29-31.)[2] Dr. Dombrowski and Dombrowski, PC oppose plaintiffs' Motion to Amend, arguing that the statute of limitations for these new claims has run, and the claims do not relate back to the filing of the original Complaint. (Defs. Dr. Dombrowski and Dombrowski, PC's Opp'n. to Pls.' Mot. to Amend ["Dombrowski Opp'n. to Pls.' Mot. to Amend"] ¶¶ 3-8.) The Court will now turn to each of these motions.

## ANALYSIS

### I. MOTION TO AMEND

Under District law, the statute of limitations for medical malpractice and informed consent claims is three years.[3] D.C. Code § 12-301(8). As more than three years have lapsed

---

[2] Plaintiffs seek $5,000,000 for each claim alleged in their original and amended complaints except for loss of consortium, for which they seek $250,000. (Am. Compl ¶¶ 22-42.)

[3] The District's choice of law rules treat statutes of limitations as procedural rather than as substantive, and thus, the District's statute of limitations applies in this case. *A.I. Trade Fin., Inc. v. Petra Int'l. Banking Corp.*, 62 F.3d 1454, 1458 (D.C. Cir. 1995).

4

since the surgery took place, plaintiff's proposed informed consent claim is time barred. Thus, the Court must evaluate whether the claim relates back to plaintiffs' original complaint, which alleged negligence in operating on Mrs. Hartley and discharging her from the MASC.

An amendment to a complaint that raises otherwise time barred claims may yet be timely if the amendment "relates back" to the date of the original complaint under Federal Rule of Civil Procedure 15(c). *Jones v. Bernanke*, 557 F.3d 670, 674 (D.C. Cir. 2009). Rule 15(c)(1)(B) provides that an amendment relates back when it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). This is "not simply an identity of transaction test." 6A Charles Alan Wright et al., *Fed. Prac. & Proc. Civ.* § 1497 (3d ed. 2010). Rather, the underlying inquiry is whether the original complaint put defendant on notice of the basis for liability that would be asserted in the amended complaint. *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 866 (D.C. Cir. 2008). An amended claim does not relate back when it "'asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.'" *Jones*, 557 F.3d at 674 (quoting *Mayle v. Felix*, 545 U.S. 644, 650 (2005)). But "the fact that an amendment changes the legal theory on which the action initially was brought is of no consequence if the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the original pleading." Wright et al., *supra* § 1497.

Other courts that have examined whether an informed consent claim relates back to claims of surgical negligence are split on the issue. *See, e.g.*, *Wagner v. Georgetown Univ. Med. Ctr.*, 768 A.2d 546, 558 (D.C. 2001) (informed consent claim related back to claim of negligence during surgery); *Azarbal v. Medical Ctr. of Del., Inc.*, 724 F. Supp. 279, 283 (D. Del. 1989) (same); *Neeriemer v. Superior Court of Maricopa County*, 477 P.2d 746, 750 (Ariz. Ct. App.

5

1970) (same); *Bigay v. Garvey*, 575 N.W.2d 107, 110 (Minn. 1998) (negligent nondisclosure claim did not relate back to claim of negligent care during surgery); *Jolly v. Russell*, 203 A.D.2d 527, 529 (N.Y. App. Div. 1994) (same); *Moore v. Baker*, 989 F.2d 1129, 1132 (11th Cir. 1993) (claim for surgical negligence did not relate back to informed consent claim). Those that do not find relation back tend to apply the reasoning of *Moore*, which held that a claim that defendant negligently performed brain surgery did not relate back to a claim that plaintiff did not give informed consent to that surgery, as the conduct underlying the claims "occurred at different times and involved separate and distinct conduct," and plaintiff would have to prove different facts to recover under each claim. *Id.*

By contrast, those courts that find relation back generally view the surgery as a whole as the "occurrence" out of which both the malpractice and informed consent claims arose. *See, e.g.*, *Wagner*, 768 A.2d at 557; *Neeriemer*, 477 P.2d at 749.

The Court prefers the latter approach as it recognizes that defendants in these cases are, as a practical matter, on notice of plaintiffs' new informed consent claims even if the original complaints did not allege the specific facts of the claims. Here, defendants knew from the original complaint that plaintiffs sought to recover damages for injuries caused by defendants' medical treatment of Mrs. Hartley. (Compl. at 1.) "Reasonably prudent" defendants would expect that plaintiffs might assert other theories of recovery for those injuries, including that Mrs. Hartley did not give informed consent to the surgery that caused them. *Wagner*, 768 A.2d at 557 (quoting Wright, et al., *supra* §1497 (2d ed. 1990)). Indeed, "[w]hen a suit is filed . . . defendant knows that the whole transaction described in it will be fully sifted, by amendment if need be, and that the form of the action or the relief prayed or the law relied on will not be confined to their first statement." *Barthel v. Stamm*, 145 F.2d 487, 491 (5th Cir.

1944); *see also Zagurski v. American Tobacco Co.*, 44 F.R.D. 440, 443 (D. Conn. 1967) (a claim for negligent failure to warn about the dangers of cigarette smoking related back to claims of negligent manufacture and breach of implied warranty of fitness because defendant had notice from original complaint that plaintiff was trying to enforce a claim for damages sustained from smoking [defendant's] cigarettes, and "[i]t is not unreasonable to require [defendant] to anticipate all theories of recovery and prepare its defense accordingly").

Given that the original complaint should have put defendants on notice of plaintiffs' informed consent claim, relation back is not precluded by the fact that plaintiffs will have to prove different facts to recover on this claim. Such a reading of Rule 15(c)(1)(B) would "prohibit relation back even where plaintiff alleged an additional specific act of negligence during the operation itself, unless the newly alleged act was related to the previously alleged specific acts." *Neeriemer*, 477 P.2d at 749. Rather, notice is the issue underlying the Rule 15(c)(1)(B) inquiry. *Meijer*, 533 F.3d at 866. Therefore, the Court concludes that plaintiffs' informed consent claim relates back to the original complaint and it will deny defendants' Motion to Dismiss this claim.

The Court also finds that plaintiff's newly added medical malpractice claim based on Dr. Dombrowski's post-surgery prescription of steroidal medication relates back to the original complaint. That complaint specifically alleged that Dr. Dombrowski had prescribed steroidal medication to treat Mrs. Hartley's post-operative paralysis and numbness. (Compl. ¶ 6.) The Amended Complaint merely asserts a new claim for malpractice based on that conduct. This is precisely the sort of amendment contemplated by Rule 15(c), which provides for relation back where the amended pleading asserts a claim arising out of the conduct set forth in the original pleading. Fed. R. Civ. P. 15(c)(1)(b). Thus, this claim relates back and is not time barred.

## II.  MOTION TO DISMISS FOR FAILURE TO COMPLY WITH MARYLAND'S ACT

Dr. Dombrowski and Dombrowski, PC have moved to dismiss plaintiffs' complaint because plaintiffs failed to comply with the pre-filing requirements for medical malpractice claims set forth in Maryland's Act. (Dombrowski Mot. to Dismiss at 1). Maryland's Act provides that as a precondition to filing suit, medical malpractice claims alleging damages in excess of a specified jurisdictional amount (i.e., $30,000)[4] must be submitted for arbitration, along with a certificate from a qualified expert attesting to the alleged malpractice. Md. Code Ann., Cts. & Jud. Proc. §§ 3-2A-01 to 09. The Act also places a cap on non-economic damages. *Id.* at § 11-108. It is uncontested that plaintiffs have not complied with the Maryland Act's preconditions. (*See* Pls.' Opp'n. at 7.) Plaintiffs, however, argue that District law, rather than Maryland law, applies. (*Id.* at 6.) The District requires only that plaintiffs send a Notice of Intent to Sue to defendants at least 90 days prior to filing suit. D.C. Code Ann. § 16-2802(a). The Court must resolve this dispute by reference to D.C.'s choice of law rules.

### A. Choice of Law

When determining the applicable law in a diversity case, a federal court applies the choice of law rules of the forum state. *Bledsoe v. Crowley*, 849 F.2d 639, 641 (D.C. Cir. 1988) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). The District uses "governmental interest analysis," which requires a court to evaluate the governmental policies underlying the applicable conflicting laws, and determine which jurisdiction's policies would be most advanced by having its law applied to the facts of the case under review. *Id.* This inquiry includes consideration of the following factors from the Restatement (Second) of Conflict of

---

[4] The jurisdictional amount is the limit of the Maryland District Court's concurrent jurisdiction with Maryland trial courts of general jurisdiction, Md. Code Ann., Cts. & Jud. Proc. § 3-2A-02(a)(1), which is currently $30,000. *Id.* §§ 4-401(1), -402(d)(1)(i).

Laws §145: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship is centered. *Jaffe v. Pallotta Teamworks*, 374 F.3d 1223, 1227 (D.C. Cir. 2004). Finally, choice of law analysis is performed for each issue adjudicated, therefore a different law can apply to different issues. *Id.*

The governmental policies underlying the malpractice laws in Maryland and in the District differ significantly. Maryland's Act is aimed at reducing the cost of malpractice insurance and overall health care costs for Maryland residents. Specifically, in making arbitration a precondition to filing suit, "[t]he goal . . . was to establish a mechanism to screen malpractice claims prior to the filing of suit. . . . [T]his would reduce the cost of defense by ferreting out unmeritorious claims which, in turn, would lower the cost of malpractice insurance and, potentially, overall health care costs." *Group Health Assoc. v. Blumenthal*, 453 A.2d 1198, 1204 (Md. 1983) (citation omitted). Similarly, the purpose behind capping non-economic damages was to "'assure the availability of sufficient liability insurance, at a reasonable cost, in order to cover claims for personal injuries to members of the public.'" *Groover v. Burke*, 917 A.2d 1110, 1118 (D.C. 2007) (quoting *Murphy v. Edmonds*, 601 A.2d 102, 114-15 (Md. 1992)). By contrast, the District's policy objective is to "[hold] its corporations liable for the full extent of the negligence attributable to them," as evidenced by the District's refusal to cap malpractice damages. *Kaiser-Georgetown Community v. Stutsman*, 491 A.2d 502, 509 (D.C. 1985). The Court considers these competing interests, as well as the other choice of law factors, as they pertain to each of plaintiffs' claims.[5]

---

[5] Plaintiffs advance another District interest. They argue that because a significant number of the physicians who own MASC practice in the District, they will "undoubtedly" refer patients

### 1. Informed Consent: Dr. Dombrowski and Dombrowski, PC

Plaintiffs claim that Dr. Dombrowski and Dombrowski, PC failed to timely advise Mrs. Hartley of the risks of having a spinal cord modulator implanted in her lumbar area, and that she would not have undergone the procedure had she been so advised. (Am. Compl. ¶¶ 22-24.) Both Maryland and the District have an interest in applying their laws to this claim because these defendants do business in both jurisdictions. Thus, large malpractice liability would affect insurance and health care costs in Maryland, while a cap on damages would prevent the District from holding its practitioners fully liable for their negligence. As both jurisdictions' policies are implicated, the Court turns to the other choice of law factors.

The negligent conduct at issue occurred in both the District and Maryland. In the District, Dr. Dombrowski failed to inform Mrs. Hartley of the risks of implantation at their pre-operation consultations, including the one at which Mrs. Hartley agreed to have the modulator permanently implanted. (Am. Compl. ¶¶ 8-9.) Nor did he adequately disclose these risks on the day of the surgery, which took place in Maryland. (Am. Compl. ¶ 10.) Plaintiffs' injuries were suffered predominantly in Pennsylvania, where plaintiffs reside.[6] (Compl. at 2.) The localities

---

seeking medical care in the District to MASC. Therefore, plaintiffs argue, the District has an interest in ensuring that these patients receive competent medical care without getting "hauled off" to Maryland where they lose the protection of District law. (Pls.' Opp'n. at 3-4.) Even assuming *arguendo* that such referrals "undoubtedly" occur, this interest would not be materially undermined by the application of Maryland law. There is no suggestion that Maryland provides less competent health care than the District, or that Maryland does not protect its patients. To the contrary, "Maryland law does not prevent a defendant from being adjudged liable for substantial damages." *Groover*, 917 A.2d at 1119. Thus, only a false conflict exists with respect to this interest. *See Bledsoe*, 849 F.2d at 641 ("'When the policy of one state would be advanced by the application of its law, and that of another state would not be advanced by application of its law, a false conflict appears and the law of the interested state prevails.'") (quoting *Biscoe v. Arlington County*, 738 F.2d 1352, 1360 (D.C. Cir.1984)).

[6] Arguably, a small portion of the injury was also suffered in Maryland, where Mrs. Hartley experienced numbness and paralysis prior to being discharged. (Compl. ¶¶ 2-4.)

of the parties do not clearly favor either Maryland or the District. Plaintiffs reside in Pennsylvania, Dr. Dombrowski is licensed in both Maryland and the District, and Dombrowski, PC, does business in Maryland and the District through Dr. Dombrowski. Finally, the center of the parties' relationship favors neither jurisdiction. While both the temporary and permanent modulators were implanted in Maryland, the consultations leading up to the surgery, the decision to go forward with permanent implantation, and the post-operative consultations occurred in Pennsylvania and the District. (Am. Compl. ¶¶ 5-10, 17-18.) See *Jenkins v. Cowen*, 1987 WL 14601, at *3 (D.D.C. July 17, 1987) (finding the District to be center of relationship as that was where plaintiff first contacted defendant, initial consultation occurred, defendant agreed to treat plaintiff, and billing and other record keeping occurred).

In sum, governmental interest analysis does not favor either Maryland or the District. Where the interests of both jurisdictions are equally weighty, the law of the forum state shall apply. *Stutsman*, 491 A.2d at 509 n.10 (noting that the forum state's interest in the fair and efficient administration of justice together with the saving that accrue to its judicial system when its judges apply law with which they are familiar tilt the balance in favor of the forum state when the interests of both jurisdictions are equally weighty). Thus, District law shall apply to plaintiffs' informed consent claim.

**2. Medical Malpractice: Dr. Dombrowski and Dombrowski, PC**

Plaintiffs claim that Dr. Dombrowski and Dombrowski, PC committed medical malpractice while implanting the spinal cord modulator. (Am. Compl. ¶¶ 26-28.) For the reasons explained above, both Maryland and the District have an interest in applying their laws to this claim. And, as above, the place of the injury, the localities of the parties, and the center of the relationship do not favor either jurisdiction. However, the negligent conduct underlying this

11

claim occurred entirely in Maryland, as that is where the surgery took place.[7] (Compl. ¶ 1.) This factor tips the scales decidedly in favor of Maryland, as "'[t]he state where the defendant's conduct occurs has the dominant interest in regulating it.'" *Bledsoe*, 849 F.2d at 643 (quoting *Biscoe*, 738 F.2d at 1361). Thus, Maryland law applies to this claim.

### 3. *Res Ipsa Loquitur*: Dr. Dombrowski, Dombrowski, PC, and MASC

Plaintiffs claim that under the doctrine of *res ipsa loquitur*, all three defendants were either individually or collectively negligent during the device implantation, thereby causing Mrs. Hartley's injuries. (Am. Compl. ¶¶ 36-40.) Again, both Maryland and the District's policy interests are implicated by this claim. But with respect to defendant MASC, Maryland's interest clearly outweighs the District's, as MASC is a Maryland corporation that conducts business in Maryland (Mem. P. & A. in Supp. of Def. MASC's Mot. to Dismiss at 2), and therefore, the effects of large malpractice liability would be felt predominantly in Maryland.[8] That MASC is a Maryland corporation further diminishes the District's interest, as the District is interested in holding *its* corporations fully liable for their negligence. *See Groover*, 917 A.2d at 1119 (noting

---

[7] Plaintiffs argue that the location of the conduct was "fortuitous" as Dr. Dombrowski, and not Mrs. Hartley, selected it. (Pls.' Opp'n. at 6.) However, this does not make the location fortuitous. *See, e.g.*, *Ott v. Kaiser-Georgetown Cmty. Health Plan, Inc.*, 689 F. Supp. 9, 13 n.2 (D.D.C. 1988) (finding that Maryland was hardly a fortuitous situs for the medical malpractice injury as defendant had designated a hospital in Maryland as one of the hospitals to be used by patients located in the area where plaintiffs lived). Rather, "fortuitous" describes events such as automobile accidents. *See Vaughan v. Nationwide Mut. Ins. Co.*, 702 A.2d 198, 202 (D.C. 1997). Moreover, this case is clearly distinguishable from *Hitchcock v. United States*, 665 F.2d 354, 360 (D.C. Cir. 1981). In *Hitchcock*, the Court likened the government defendant to a national corporation with headquarters in the District and a clinic in Virginia, and found that the negligent medical treatment fortuitously occurred in Virginia because the treatment resulted from policies developed in the District and therefore would have occurred regardless of where the clinic was located. No such circumstances are present here.

[8] Plaintiffs argue that because a significant number of MASC's physician-owners have offices in the District, MASC conducts business in the District. (Am. Compl. at 2) Assuming *arguendo* that this is true, plaintiffs do not dispute that MASC's *principal* place of business is in Maryland.

that while the District has a significant interest in "holding *its* corporations" fully liable for their negligence, it does not have a similar interest with respect to Maryland corporations).

The analysis of the four Restatement factors is similar to the Restatement analysis above, with the localities of the parties more strongly favoring Maryland due to MASC. Thus, the Court finds that Maryland law applies to plaintiffs' *res ipsa loquitur* claim.

### 4. Medical Malpractice: MASC

Plaintiffs claim that MASC committed medical malpractice by discharging Mrs. Hartley after the operation without first seeking physician approval. (Am. Compl. ¶¶ 33-35.) Maryland clearly has the greater interest in this claim as it concerns a Maryland corporation, the negligent conduct occurred in Maryland, the injury was suffered in Pennsylvania and arguably also in Maryland (*see supra* note 6), and the parties' localities are in Maryland and Pennsylvania. Thus, Maryland law applies to this claim.

### 5. Medical Malpractice: Dr. Dombrowski and Dombrowski, PC

Plaintiffs allege that Dr. Dombrowski and Dombrowski, PC committed medical malpractice by prescribing Mrs. Hartley steroidal medication in response to her complaints of numbness and paralysis post-operation. (Am. Compl. ¶¶ 29-32.) The choice of law analysis for this claim is the same as for the informed consent claim against these defendants, except that here, the negligent conduct occurred in the District. Thus, this "dominant interest" tips the scales in favor of the District, and District law applies to this claim. *Bledsoe*, 849 F.2d at 643 (quoting *Biscoe*, 738 F.2d at 1361).

### 6. Loss of Consortium: Dr. Dombrowski, Dombrowski, PC, and MASC

Finally, plaintiffs allege that all three defendants are liable for Mr. Hartley's loss of consortium due to Mrs. Hartley's condition. (Am. Compl. ¶¶ 41-42.) For loss of consortium

13

claims, the District applies the law of the state where the marriage is domiciled. *Long v. Sears Roebuck & Co.*, 877 F. Supp. 8, 13 (D.D.C.1995) (citing *Stutsman v. Kaiser Foundation Health Plan*, 546 A.2d 367 (D.C. 1988)); *Parnigoni v. St. Columba's Nursery School*, 681 F. Supp. 2d 1, 13 (D.D.C. 2010); *see also Felch v. Air Fla., Inc.*, 562 F. Supp. 383, 386 (D.D.C. 1983) (noting that under governmental interest analysis, an action for loss of consortium is typically governed by the law of the state of marital domicile rather than the law of the state where the wrong occurred). Thus, plaintiffs' loss of consortium claim is governed by Pennsylvania law, as that is where plaintiffs' marriage is domiciled and the injury to the marital relationship is suffered. *See Long*, 877 F. Supp. at 13.

### B. Dismissal of Claims Governed by Maryland Law

The Court has found that Maryland law applies to three of plaintiffs' six claims: medical malpractice for surgical negligence against Dr. Dombrowski and Dombrowski, PC, *res ipsa loquitur* against all three defendants, and medical malpractice against MASC. Plaintiffs requested that if the Court found Maryland law applicable, that it stay the action for 150 days to allow for arbitration to be completed. (Pls.' Opp'n. at 7.) Dr. Dombrowski and Dombrowski, PC seek dismissal of the claims instead. (Dr. Dombrowski and Dombrowski, PC's Reply to Pls.' Opp'n. ¶ 7.) Other courts deciding whether to stay or dismiss claims for failure to comply with pre-filing requirements have dismissed without prejudice. *See, e.g.*, *Davis v. Grant Park Nursing Home LP*, 639 F. Supp. 2d 60, 73 (D.D.C. 2009) (dismissing claim where plaintiff had failed to give notice of intent to file suit as required by District law); *Davison v. Sinai Hospital*, 462 F. Supp. 778, 781 (D. Md. 1978), *aff'd*, 617 F.2d 361 (4th Cir. 1980) (dismissing complaint where plaintiffs failed to arbitrate as required by Maryland law); *Stanley v. United States*, 321 F. Supp. 2d 805, 809 (N.D.W.Va. 2004) (dismissing complaint where plaintiff failed to comply

14

with West Virginia's pre-filing requirements). Though the D.C. Circuit had found dismissing rather than staying to be an abuse of discretion where plaintiff had requested a stay *and* arbitration proceedings were already underway, *Bledsoe*, 849 F.2d at 645-46, there is no indication that arbitration has ever been initiated here. Thus, the Court shall dismiss without prejudice the claims as to which Maryland law applies. *See Davis*, 639 F. Supp. 2d at 73 (dismissing for failure to complete pre-filing requirements where *Bledsoe* circumstances not present); *see also Lewis v. Waletzky*, 576 F. Supp. 2d 732, 738 (D. Md. 2008) (noting that Maryland's policy of requiring arbitration prior to filing suit is "'so strong'" that a court will "'*sua sponte* . . . order an action dismissed where the litigants have not followed the special statutory procedure'") (quoting *Oxtoby v. McGowan*, 447 A.2d 860, 864-65 (Md. 1982)).

### III. MOTION TO TRANSFER

Dr. Dombrowski and Dombrowski, PC have moved to transfer the case to the Southern Division of the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1404(a). (Defs. Dr. Dombrowski and Dombrowski, PC's Mot. to Transfer at 1.) This statute allows a district court to transfer a case to another district where the case might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). In deciding whether to transfer, a court is to consider several private and public interest factors. The private interest factors include (1) the plaintiff's choice of forum, (2) the defendant's choice of forum, (3) where the claim arose, (4) the convenience of the parties, (5) the convenience of the witnesses, particularly if important witnesses may actually be unavailable to give live trial testimony in one of the districts, and (6) the ease of access to sources of proof. *Montgomery v. STG Intern., Inc.*, 532 F. Supp. 2d 29, 32-34 (D.D.C. 2008). The public interest

factors include (1) the transferee's familiarity with the governing laws, (2) the relative congestion of each court, and (3) the local interest in deciding local controversies at home. *Id.*

Given the proximity of Maryland to the District, public, rather than private, interest factors predominate. *See Medlantic Long Term Care Corp. v. Smith*, 791 A.2d 25, 31 (D.C. 2002) ("Where the plaintiff's choice of forum is between the District of Columbia and one of the counties in the Washington, D.C. metropolitan area . . . the public interest factors predominate for the obvious reason that the relative ease or difficulty in getting to a D.C. court and a metropolitan court outside D.C. is usually the same."). Here, public interest factors disfavor transfer, as Maryland law is not applicable to the remaining claims. Rather, District law applies to plaintiffs' informed consent and post-surgical malpractice claims, and Pennsylvania law applies to plaintiff's loss of consortium claim. Thus, the District is more familiar with the governing laws than is Maryland. Additionally, most of the conduct underlying the remaining claims occurred in the District, while the injury was suffered in Pennsylvania. (Am. Compl. ¶¶ 8-10, 17.) Thus, the local interest in deciding local controversies also favors the District over Maryland. In light of these factors and the deference that is given to plaintiffs' initial forum choice, *Robinson v. Eli Lilly and Co.*, 535 F. Supp. 2d 49, 52 (D.D.C. 2008), the Court will deny defendants' Motion to Transfer.[9]

## IV.    Motion to Dismiss for Lack of Personal Jurisdiction

As all claims against MASC have been dismissed, the Court will deny MASC's Motion to Dismiss for lack of personal jurisdiction as moot.[10]

---

[9] Note that plaintiff's choice of forum would receive even more deference if it were their home forum. *Robinson*, 535 F. Supp. 2d at 52.

[10] Although plaintiffs' loss of consortium claim remains, there remain no underlying claims of negligence against MASC. Thus, there can be no loss of consortium claim against MASC as a

16

**CONCLUSION**

The Court will grant plaintiffs' Motion to Amend and it will grant in part Dr. Dombrowski and Dombrowski, PC's Motion to Dismiss. As a result, all claims against MASC shall be dismissed. The remaining claims against Dr. Dombrowski and Dombrowski, PC for informed consent, medical malpractice for the post-surgery prescription of steroidal medication, and loss of consortium shall remain in this Court, which will apply District law to the informed consent and medical malpractice claims, and Pennsylvania law to the loss of consortium claim.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

DATE: October 18, 2010

---

spouse may only recover for loss of consortium against a defendant who has tortiously caused injury to the other spouse. *See* 21 George L. Blum, *Standard Pennsylvania Practice* § 116:31 (2d ed.).